AO 91 (Rev. 5/85) Criminal Complaint

# United States District Court

_____ DISTRICT OF _____DELAWARE_____

UNITED STATES OF AMERICA
V.

HENRY DWAYNE SUDLER

**CRIMINAL COMPLAINT**

CASE NUMBER: 06- 14M-MPT

REDACTED

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about __March 30, 2005__ in __Kent__ (JD) 01/25/06 county, in the _____ District of __Delaware__ defendant(s) did, (Track Statutory Language of Offense)

knowingly distribute cocaine, a controlled substance, and did knowingly conspire with another to distribute and possess with intent to distribute cocaine, a controlled substance,

in violation of Title __21__ United States Code, Section(s) __841(a)(1) and 846__.

I further state that I am a(n) __DEA Special Agent__ and that this complaint is based on the following
                                    Official Title

facts: AFFIDAVIT attached.

FILED

? 5 2006

Continued on the attached sheet and made a part hereof:   [X] Yes   [ ] No

Signature of Complainant
Jeffrey Dunn, Special Agent
Drug Enforcement Administration

Sworn to before me and subscribed in my presence,

January 25, 2006                          at    Wilmington, Delaware
Date                                             City and State

Honorable Mary Pat Thynge
United States Magistrate Judge
Name & Title of Judicial Officer                 Signature of Judicial Officer

I, Special Agent Jeffrey Dunn, being duly sworn, depose and say:

1. I am a Special Agent of the U.S. Drug Enforcement Administration (hereafter "DEA") assigned to the Dover, Delaware Drug Task Force.

2. I have served as a DEA Special Agent since May 1997. Prior to my assignment to the Dover Drug Task Force, I was assigned to the DEA Philadelphia, Pennsylvania Field Division and the DEA Detroit, Michigan Field Division. I have received specialized training from the DEA Academy at Quantico, Virginia, in the investigation and identification of drug traffickers and other criminals. I have participated in the investigation and prosecution of numerous drug traffickers and other criminals, and have conducted physical and electronic surveillance, debriefed confidential sources, interviewed witnesses, executed search warrants, analyzed telephone toll records and reviewed tape recorded conversations concerning drug trafficking. The contents of this affidavit are a compilation of my observations in conjunction with the observations of other law enforcement officers.

3. On March 30, 2005, Officers from the Delaware State Police Governor's Task Force (hereafter "GTF") executed a state search warrant at                    , Dover, DE, a residence of Garfield SUDLER'S. Upon entry into the residence, Officers detained Garfield SUDLER and conducted a search of his person. The search of Garfield SUDLER resulted in the seizure of approximately fifty-one (51) gross grams of suspected cocaine hydrochloride, which was packaged in seven (7) small individual bags. The GTF Officers then arrested Garfield SUDLER for violation of Delaware state drug laws. The suspected cocaine hydrochloride was subsequently submitted to the DEA Northeast Regional Laboratory where is was confirmed to be cocaine hydrochloride.

4. A search of the residence resulted in the additional seizure of approximately 656 gross grams of suspected cocaine hydrochloride, which the DEA Northeast Regional Laboratory also confirmed to be cocaine hydrochloride. Officers also seized approximately $60,840 in United States currency and three (3) digital scales.

5. Following his arrest, Garfield SUDLER agreed to cooperate with law enforcement authorities and attempt to arrange the delivery of a quantity of cocaine from his source of supply. Garfield SUDLER explained to the Agents and Officers that his cousin, whom he identified as Dwayne SUDLER from Reading, PA, had supplied him with cocaine over the past one to two years. (Agents subsequently identified Dwayne SUDLER as Henry Dwayne SUDLER, Jr.) During that time frame, Henry Dwayne SUDLER supplied cocaine to Garfield SUDLER on approximately five to ten occasions. On each occasion, Henry Dwayne SUDLER provided Garfield SUDLER with approximately 750 grams of cocaine.

6. On March 31, 2005, at approximately 2:45 p.m., at the direction of Agents and Officers, Garfield SUDLER contacted Henry Dwayne SUDLER via Nextel "direct connect." In summary, Garfield SUDLER asked Henry Dwayne SUDLER to supply

"one, one and a half…" kilograms of cocaine. While negotiating for a delivery time, Henry Dwayne SUDLER told Garfield SUDLER, "…I'm gonna try to come today…"

7. On March 31, 2005, at approximately 3:00 p.m., Garfield SUDLER contacted Henry Dwayne SUDLER via Nextel "direct connect." In summary, Henry Dwayne SUDLER told Garfield SUDLER that if he travels to Reading, PA, that "…he, he'll let it go for two-four." While continuing to negotiate a delivery location, Henry Dwayne SUDLER said, "…he says if we come out there, he said it'll be two-four and a half." Your affiant believes that when Henry Dwayne SUDLER refers to "he," that Henry Dwayne SUDLER is referring to his cocaine source of supply. Your affiant also believes that Henry Dwayne SUDLER'S reference "two-four" is a code for the price of $24,000 for the kilogram of cocaine, which is consistent with the current price for a kilogram of cocaine in the Dover, DE area. Furthermore, Henry Dwayne SULDER'S reference "two-four and a half" is another quote for the price of the cocaine. However, Henry Dwayne SUDLER and his source of supply are charging a $500 transportation fee because they have to transport the kilogram of cocaine from Reading, PA to Dover, DE.

8. On March 31, 2005, at approximately 3:20 p.m., Garfield SUDLER contacted Henry Dwayne SUDLER via Nextel "direct connect." In summary, Henry Dwayne SUDLER advised Garfield SUDLER that his source of supply was able to supply multi-kilograms of cocaine to Garfield SUDLER. Henry Dwayne SUDLER said, "…he got the big boy with him and shit, so he was just asking… the low he could do was (unintelligible) five is two-one and a half." Your affiant believes that Henry Dwayne SUDLER was acting as a broker and offered Garfield SUDLER five (5) kilograms of cocaine for $21,500 per kilogram on behalf of Henry Dwayne SUDLER'S source of supply. (I am also aware that cocaine suppliers offer quantity discounts when multi-kilograms are purchased.) Garfield SUDLER told Henry Dwayne SUDLER that he would be unable to purchase that quantity of cocaine at the present time. Henry Dwayne SUDLER acknowledged and advised Garfield SUDLER that his source of supply would need "…a week or two…" in the event that Garfield SUDLER wanted to purchase multi-kilograms of cocaine.

9. On March 31, 2005, at approximately 5:40 p.m., Garfield SUDLER contacted Henry Dwayne SUDLER via Nextel "direct connect." In summary, Henry Dwayne SUDLER told Garfield SUDLER that it was late in the day and that he will probably travel to Delaware the following day to deliver the cocaine.

10. On April 1, 2005, at approximately 4:21 p.m., Garfield SUDLER contacted Henry Dwayne SUDLER via Nextel "direct connect." In summary, Henry Dwayne SUDLER informed Garfield SUDLER that he (D. SUDLER) was advised by a family member that Garfield SUDLER had been arrested. Garfield SUDLER denied having been arrested and Henry Dwayne SUDLER then told Garfield SUDLER that he was planning to travel to Delaware in approximately one (1) hour. Henry Dwayne

SULDER and Garfield SUDLER then continued to negotiate a location to meet in order to conduct the cocaine transaction.

11. Based on the above information, I believe that there is probable cause that Henry Dwayne SUDLER is in violation of Title 21 USC § 841(a)(1), distribution of a controlled substance, and Title 21 USC § 846, conspiracy to distribute and possess with intent to distribute a controlled substance.

Jeffrey Dunn
Special Agent, DEA

Subscribed and sworn to before me on this the ___25___ day of January 2006.

The Honorable Mary Pat Thynge
United States Magistrate Judge